[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from a decision of the defendant Commissioner of the Department of Income Maintenance upholding the denial to the plaintiff of medical assistance benefits commonly known as Medicaid. The denial of benefits was upheld after a fair hearing was held pursuant to Connecticut General Statutes 17-2a. The hearing officer found that the plaintiff was ineligible for Medicaid benefits because he is the beneficiary of a "Medicaid qualifying trust" as defined under state regulation and the assets of the trust exceed the asset limit for the Medicaid program. The plaintiff brings this appeal pursuant to Connecticut General Statutes 17-2b(b) and 4-183 claiming principally that the hearing officer erred in finding that the trust was established by the claimant Gregory Forsyth because the actions of his fiduciaries are "legally attributable" to him. The CT Page 11070 decision cited no authority for that conclusion.
The material fact are not in dispute. Gregory Forsyth was seriously injured in a motor vehicle accident on August 26, 1988, and as a result he became permanently and severely disabled. His disabilities include brain injury and he is unable to care for himself or manage his affairs. On April 26, 1989, Lynn Forsyth, Gregory's father, was appointed conservator of Gregory's estate and person. Mr. Forsyth brought suit to recover damages for Gregory's injuries and on August 13, 1990, Mr. Forsyth signed a settlement agreement whereby a settlement of $300,000 was agreed to. The agreement provided that $300,000 was to be paid directly to the Gregory L. Forsyth Trust (the "Trust"). A Trust agreement for the Gregory L. Forsyth Trust was executed on August 24, 1990.
The Trust agreement provides that the purpose of the Trust is to provide supplemental health care for Gregory. Creation of the Trust was recommended by both Gregory's conservator and a guardian ad litem or Gregory who was appointed by the Probate Court. On November 1, 1990, the Ridgefield Probate Court approved both the Settlement Agreement and the Trust Agreement. The net proceeds of the Settlement, approximately $195,000, were paid into the Trust. Gregory is the beneficiary of the Trust. He was denied Medicaid benefits because of the existence of the Trust. He was denied Medicaid benefits because of the existence of the Trust. The defendant found after a hearing that the Trust is a Medicaid qualifying trust and Gregory is therefore ineligible for Medicaid assistance. The plaintiff disputes this.
The plaintiff has the right to appeal the decision of the defendant pursuant to Connecticut General Statutes 17-2b(b) and 4-183(a). The court finds that the plaintiff is aggrieved by the decision of the defendant because it denies him Medicaid benefits to which he claims to be entitled.
Connecticut General Statutes 4-183(j) sets forth the applicable standard of review by which this court is bound. As applied to the claims made here, the statute requires the court to affirm the decision of the agency unless substantial rights of the plaintiff have been prejudiced because of error of law. Connecticut General Statutes 4-183(j)(4). The hearing officer found that the actions of Gregory's fiduciaries in creating the trust are "legally attributable" to Gregory. This conclusion is a conclusion of law.
When reviewing an administratively reached conclusion of CT Page 11071 law, the court must determine whether the agency "acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." Connecticut Light Power Co. v. DPUC, 219 Conn. 51, 57-58
(1991), "Although the factual and discretionary determinations of administrative agencies are to be given considerable weight by the court, it is for the courts, and not for administrative agencies, to expound and apply governing principles of law." (Citations omitted.) Connecticut Humane Society v. Freedom of Information Commission, 218 Conn. 757, 762 (1991).
In 1965, Congress enacted Title XIX of the social Security Act, 42 U.S.C. § 1396 it seq., also known as the Medicaid Act. This act established a program by which the federal government reimburses states participating in the program for a portion of the costs incurred by those states in providing certain medical services to needy individuals. See Schweiker v. Gray Panthers,453 U.S. 34 101 S.Ct. 2633, 69 L.Ed.2d 460 (1981). To participate in the Medicaid program, a state must develop and then file with the Secretary Health and Human Services a plan which complies with requirements imposed both by the Medicaid Act and by the Secretary. Each state must designate a single agency to administer or supervise the administration of its Medicaid plan. Connecticut has elected to participate in the Medicaid program. See General Statutes 17-134 et seq.
The Medicaid program has traditionally provided medical assistance for two categories of recipients, the "categorically needy" and the "medically needy." Winter v. Miller, 676 F.2d 276
(7th Cir. 1982). The categorically needy are those individuals who are eligible to receive cash assistance under one of the general welfare programs, either the Aid to Families with Dependent Children program (AFDC) or the Supplemental Security Income for the Aged, Blind or Disabled program (SSI). Id., 277. The medically needy are persons who lack the ability to pay for medical services, but who are ineligible for cash assistance under AFDC or SSI because their income or resources exceed the eligibility standards for those programs. Id.
Gregory Forsyth's conservator applied for Title XIX assistance as a medically needy person. His application was denied on the basis that he was the beneficiary of what is described under federal saw as a "Medicaid qualifying trust." The value of a Medicaid qualifying trust must be considered when determining the eligibility of a title XIX applicant. See 42 U.S.C. § 1396a
(a)(17)(B). The threshold requirement for a Medicaid CT Page 11072 qualifying trust under federal and state law is that the trust is established by the Medicaid applicant or his spouse.
42 U.S.C. § 1369a(k) defines a Medicaid qualifying trust as a trust
 established (other than by will) by an individual (or an individual's spouse) under which the individual may be the beneficiary of all or part of the payments from the trust and the distribution of such payment is determined by one or more trustees who are permitted to exercise any discretion with respect it the distribution to the individual.
 (3) This subsection shall apply without regard to — (A) Whether or not the Medicaid Qualifying Trust is irrevocable or is established for purposes other than to enable a grantor to qualify for medical assistance under this title (42 USCS 1396 et seq.); or
 (B) whether or not the discretion described in paragraph (2) actually exercised.
The applicable Medicaid qualifying trust provision under state law is set forth in Connecticut DIM Uniform Policy Manual 4030.80(c):
 The funds in a trust are considered available to an individual if:
 1. the trust was established by the individual or the individual's spouse other than by means of a will; and
2. the individual is the beneficiary of the trust; and
 3. the trustee is able to distribute the funds to the individual at the trustee's discretion. This is true even id:
a. the trust is irrevocable; and
b. the trustee does not exercise his or her discretion.
The policies contained in this manual have the power of regulation and should be viewed as reflecting the laws governing the Department's administration of its programs. Connecticut DIM Uniform Policy Manual 0200. See Richard v. Commissioner of CT Page 11073 Income Maintenance, 214 Conn. 601 (1990) (Department of Income Maintenance Uniform Policy Manual has the force of regulation).
The hearing officer concluded that the Trust met the first requirements because it was established by the plaintiff acting through fiduciaries whose actions are "legally attributable" to him. Therefore, the hearing officer concluded that the Trust is a Medicaid qualifying trust. (Notice of Decision p. 10). The decision cites no authority for the conclusion that the actions of the conservator are attributable to the ward. Close analysis of the issue demonstrates no basis in Connecticut law for such a conclusion. The specific issue presented, whether a trust created by a conservator or other fiduciary is a trust established by the incompetent Medicaid applicant, has not been previously decided in this state. There is a division of authority in those states which have addressed the issue.
In describing the duties of a conservator of the estate, Connecticut General Statutes 45a-655 provides that "[t]he conservator shall manage all the estate and apply so much of the net income thereof, and, if necessary, any part of the principal of the property, which is required to support the ward . . . and to pay his debts." Connecticut General Statutes 45a-655(a) (formerly 45-75(a)). The care and management of the ward's estate, however, are primarily entrusted to the Probate Court and "the conservator is in many respects but the arm or agent of the court in the performance of the trust and duty imposed on it." Shippee v. Commercial Trust Co., 115 Conn. 326, 330 (1932). "Under our law, it is clear that the conservator acts under the supervision and control of the Probate Court." Marcus' Appeal from Probate,199 Conn. 524, 529 (1986). Indeed, authorization or approval by the Probate Court of contracts on behalf of the ward's estate "is essential, and without it the ward's estate is not liable." Elmendorf v. Poprocki, 155 Conn. 115, 118 (1967).
"The purpose of a conservatorship is to make necessary provision for the incapable person during his disability. A conservator of an estate owes a duty of loyalty to a ward." (Citations omitted.) Marshall v. Kleinman, 186 Conn. 63, 65 1982). The situation is this: "the ward is powerless to control his own affairs, the conservator occupies a fiduciary relationship to him, and the Probate Court has an affirmative duty to protect the ward's assets." Marshall v. Kleinman, 186 Conn. 67 70 (1982). These statements of the role of the conservator under Connecticut law do not provide CT Page 11074 any basis for concluding that the actions of the conservator are taken as an agent for the ward or are otherwise legally attributable to the ward. If the conservator does act as an agent, the case law suggests that the principal is the Probate Court, not the ward.
The apparent lack of legal attribution is reinforced by the legally distinct actions, rights and obligations of conservator and ward. If a conservator makes unauthorized gifts from the ward's estate, the estate has a legally enforceable right of action for restitution against the conservator. Marcus' Appeal, supra, 533. The conservator cannot use his ward's estate as collateral to borrow money to purchase an interest in a business. Church v. Rosenstein,85 Conn. 279, 281 (1912). The conservator cannot arbitrarily change the manner in which the funds of the ward are invested. State v. Washburn 67 Conn. 187, 1196 (1896). A conservator has the right to enter his ward's home, without the ward's permission and against the ward's will, to attend to any necessary duties required by his position as conservator. State v. Hyde,29 Conn. 564, 569 (1861). If at a future time the ward becomes competent to manage `his own affairs, he may challenge the actions of the conservator, or in an appeal from the final accounting submitted by the conservator, or in an action for breach of fiduciary duty, See Kochuk v. Labaha, 126 Conn. 324, 329-30 (1940). Any fiduciary who makes an improper payment is accountable to the ward for the amount so disbursed and even a claim that the payment was made in good faith is not a defense to the fiduciary's liability. (Citations Omitted.) McAuliffe v. Carlson, 386 F. Sup. 1245,1250 (D. Conn.), revd on other grounds, 520 F.2d 1305
(2d Cir 1975), cert. denied, 427 U.S. 911, 96 S.Ct 3199,49 L.Ed.2d 1203 (1976) (Conservator obtained funds of ward that were deposited in patient account and applied them toward cost or treatment).
There is no authority in Connecticut conservatorship law generally which supports the hearing officer's conclusion that the creation of the Trust by the conservator was legally attributable to Gregory Forsyth. There is also no authority in Connecticut directly on point, deciding whether a conservator's creation of a trust constitutes the act of the Medicaid applicant. Courts in other states have considered this question, but he decisions are divided.
The earliest case to decided this point was Hatcher v. Department of Health and Rehabilitative Services, 545 So.2d 400
(Fla.App. 1989), where the court held that a trust created by a CT Page 11075 guardian for a mentally incompetent person was a Medicaid qualifying trust. Although noting that 42 U.S.C. § 1396a (k)(2) was intended to apply to "grantor" trusts and not "non-grantor" trusts such as those created by parents for their children, the court nevertheless found, without factual foundation, that the guardian "was merely acting in place of its ward" and that the trust in question should not be interpreted as establishing a non-grantor trust "because recipients of public assistance should not be able to avoid the spirit of the law by use of a guardian." Id. at 402. The court's decision is brief and conclusionary in nature.
In Barham by Barham v. Rubin, 172 Haw. 308 (1991), the Hawaii Supreme Court decided that a trust created by a probate court with the proceeds of a personal injury suit for the disabled Medicaid recipient was Medicaid qualifying trust. The recipient argued that the definition of Medicaid qualifying trust was by its terms limited to a trust created by the recipient or his spouse and that the trust in question was not so created. The court found that reading of the statute "too narrow" and stated that permitting the recipient to collect income from the trust "would violate the spirit and intent of the medicaid laws." Id. at 967. The decision also cites and relies on Hatcher and attempts unsuccessfully to distinguish Miller v. Ibarra, 746 F. Sup. 19 (D. Colo. 1990) on its facts.
Miller v. Ibarra is the earliest of the decisions finding that trusts created by the courts for incompetent persons are not Medicaid qualifying trusts. In Miller, the Colorado probate courts created trusts on behalf on four mentally incompetent elderly women. Each trust prohibited the trustee from making monthly distributions that exceeded the allowable monthly income under Medicaid. Miller, supra, 20-23.
In analyzing the applicability of the Medicaid qualifying trust provisions of state and federal law, the federal court first found that the trusts were not created voluntarily by the plaintiffs. The plaintiffs had been found incompetent and therefore were incapable of voluntarily transferring assets. The court next found that it would not be appropriate to treat the creation of the trusts by the probate court as the creation of the trusts by the beneficiary. The court noted that although the courts have the authority to act in the best interests of the beneficiary, they do not act as the beneficiaries themselves. Moreover, the court noted, federal guidelines addressing the creation of trusts by legal representatives on behalf of those not legally competent had never been promulgated as regulations. The federal guideline stated: CT Page 11076
 A trust that is established by an individual's guardian or legal representative, acting on the individual's behalf, falls under the definition of a Medicaid qualifying trust. If an individual is not legally competent, for example, at trust established by his legal guardian (including a parent) using the individual's assets can be treated as having been established by the individual, since the individual could not establish the trust for himself.
Id. at 31, quoting Department of Health and Human Services, health Care Financing Administration, State Medicaid Manual, Part 3-Eligibility, Transmittal No. 37 at 2 (May 1989).
The court held that 42 U.S.C. § 1396 a(k) did not invalidate the trusts at issue because the trusts were not created by the individual applying for Medicaid benefits nor by his spouse. The court noted that this result was consistent with Congress' intention "to prevent wealthy individuals, otherwise ineligible for Medicaid benefits, from making themselves eligible by creating irrevocable trusts in order to preserve assets for their heirs." Id. at 34.
The most recent decision on point is Kegel v. State, 830 P.2d 563
(N.M.App. 1991). In Kegel, a child born with severe physical and possibly mental disabilities was the beneficiary of a trust fund established as part of the settlement agreement in a medical malpractice action. Kegel, supra, 564. In holding that a trust created by a conservator for the benefit of his or her ward is not a Medicaid qualifying trust, the court considered the plain language of 1396a(k)(2), which limits the application of that section to trusts created by the beneficiary or beneficiary's spouse. Id. at 566. The court noted that the legislative history of 1396a(k)(2) indicates that Congress intended to correct a specific abuse, "`distributions from grantor trusts, not distributions nor principal from non-grantor trusts, such as those established by parents for children.'" Id., quoting 132 Cong. Rec. H11432 (daily ed. October 17, 1986 (reprint of conference committee report)). "`The Committee does not intend that trusts established solely for the benefit of disabled children, from which the grantor or other individual can under the terms of the trust receive no benefit, be treated as Medicaid qualifying trusts.'" Id., quoting H.R. Rep. No. 99-265, 99th Cong. 1st Sess., at 72 (1985). Because the child never had "unrestricted legal or equitable title" to the money which funded the trust and "played no role in the decision to create the trust," the court in Kegel concluded that the child could not be considered the grantor of the trust. The court CT Page 11077 held that "the trust fund is not within the express or implied intent of Congress on enacting 1396(k)(2)." Id., 568.
This court finds that the Miller and Kegel decisions present the better-reasoned analysis in this division of authority. Both cases decided the issue based primarily on the express wording of the federal statute and applicable state law. Both cases also rest on a detailed analysis of facts and of express legislative intent. Hatcher and Barham, on the other hand, both cite to a vague "spirit" of the law without any examination of expressed legislative intent nor any consideration of the express language of the statute and regulation.
Both state and federal law expressly require that a trust must be established by the Medicaid applicant or his spouse in order to be considered a Medicaid qualifying trust. "When language used in a statute is clear and unambiguous, its meaning is not subject to modification or construction. Seals v. Hickey, 186 Conn. 337,346, 441 A.2d 604 (1982)." Cilley v. Lamphere, 206 Conn. 6, 9-10
(1988). The Trust does not meet this initial requirement because it was not established by Gregory Forsyth or his spouse. There is no evidence that Gregory Forsyth, who is legally incapable, initiated or acquiesced in the decision to create the Trust. There is no evidence of whether Gregory would have himself created the Trust if he were legally capable. It cannot be disputed that Gregory Forsyth did not establish the Trust or participate in its establishment.
The hearing officer, who found that the actions of Gregory's fiduciaries were legally attributable to him, failed to cite any authority or provide any analysis to support this conclusion of law. There is no support in Connecticut conservatorship law generally for such a conclusion. Nor is there any support for such a conclusion in the provisions of federal or state law relative to Medicaid qualifying trusts. The federal guideline referred to in Miller, to the effect that creation of a trust by a legal representative of an incompetent person is within the definition of a Medicaid qualifying trust, remains unpromulgated as a federal regulation. The state has not adopted any similar regulations. Therefore, 4030.80(c) of the DIM Uniform Policy Manual remains limited by its express terms th a trust created by the Medicaid applicant or his spouse. (The court notes the recent passage of P.A. 92-233, which provides that transfers of assets by conservators for Medicaid applicants are attributable to the applicant. This state does not apply to Medicaid qualifying trusts, but it does demonstrate CT Page 11078 the availability of legislative assistance to enact in statutory form chances in DIM policy.)
The court finds that the decision of the hearing officer is erroneous in its legal conclusion that he act of the conservator in creating the Trust is legally attributable to Gregory Forsyth. In ruling as he did, the hearing officer, like he courts in Hatcher and Barham, seemed concerned that a conservator should be permitted to shelter assets for the Medicaid recipient. however, the obligation of the hearing officer and of this court is to decide the issue in accordance with the applicable law, which is 42 U.S.C. § 1396a(k) and DIM Policy Manual 4030-80(c). "[I]t is reasonable that a state court should not construe 1396a(k)(2) to include trusts other than those to which it expressly or by clear implication extends." Kegel v. State, supra, 566. If the statute or the regulation is inconsistent with the general purpose of the Medicaid program "or works in contravention of prudent resource management, it is the legislative branch to which appeals for modification must be made." Philbrook v. Glodgett, 421 U.S. 707, 719,95 S.Ct. 1893, 44 L.Ed.2d 525 (1974).
This appeal is sustained.